IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DION CRAIG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-04-3929 |
| | § | |
| AMERIQUEST MORTGAGE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

ORDER

Pending before the Court is Defendant Ameriquest Mortgage Company's Motion for Summary Judgment (Instrument No. 11). Having considered the motion, submissions, and applicable law, the Court determines that the motion should be granted.

BACKGROUND

This is an action brought pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") against Ameriquest Mortgage Company ("Ameriquest"), a national mortgage lender. Plaintiff Dion Craig ("Craig") asserts Ameriquest violated the DTPA and the Texas Insurance Code in connection with its actions as the mortgage lender for the residence he purchased in April 2002. The crux of Craig's claim involves a dispute about whether he maintained hazard insurance on

his residence as required by the terms of Ameriquest's $188,321 purchase money loan. Specifically, Craig asserts Ameriquest wrongfully (1) forced him to buy more than one hazard insurance policy for the property; (2) foreclosed on his home; (3) misapplied his mortgage payments; and (4) misinformed credit companies about his mortgage payment history.  He argues Ameriquest's actions as his mortgage lender included knowing misrepresentations and unconscionable acts entitling him to actual, trebled and punitive damages in addition to attorney's fees.

Craig initially brought suit in the 333rd District Court, Harris County, Texas on August 23, 2004.  Ameriquest timely removed the suit to this Court based on the parties' diversity of citizenship.[1]  On September 1, 2005, Ameriquest moved for summary judgment, arguing Craig does not meet the DTPA's definition of consumer and therefore lacks standing to bring his claims.  Additionally, Ameriquest asserts Craig failed to maintain insurance on the property and pay his monthly mortgage pursuant to the terms of the loan.  Craig failed to respond to Ameriquest's motion.

<u>STANDARD OF REVIEW</u>

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

---

[1]  Craig is a Texas resident; Ameriquest is incorporated in Delaware and maintains its principal place of business in California.

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Initially, the movant bears the burden of demonstrating to the court that there is an absence of a genuine issue of any material fact.  *Id.* at 323.  The burden then shifts to the party who bears the burden of proof on the claims on which summary judgment is sought to present evidence beyond the pleadings to show there is a genuine issue for trial.  *Id.* at 324.  Summary judgment should only be granted when the entire record shows that no genuine issue of material fact exists.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*. at 249-50.  Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint.  *E.g.*, *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 713 (5th Cir.1994).  It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue.  *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n. 30 (5th Cir. 1992).

Rule 56(e) requires the party against whom a summary judgment motion is made

to "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV.

P. 56(e).  Absent such a response, a properly supported motion for summary judgment

should be granted.  *Eversly v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

Generally, a party's failure to respond to a motion is taken as a representation of no

opposition.  S.D. TEX. LOCAL R. 7.4.  However, the mere fact that no opposition is filed

does not excuse the moving party from meeting its burden on the summary judgment

motion.  *See, e.g.*, *John v. La. Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 709

(5th Cir. 1985).  Thus, the Court will determine whether Defendant has met its burden

for summary judgment on the Plaintiff's DTPA claims.

<u>LAW & ANALYSIS</u>

In the instant case, Craig seeks to relief pursuant to the DTPA, which was

enacted to shield consumers from false, misleading, or deceptive trade practices and

to provide procedures to secure such protection.  TEX. BUS. & COM. CODE ANN.

§ 17.44(a) (Vernon 2002); *see PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd.

P'ship*, 146 S.W.3d 79, 84 (Tex. 2004).  In response, Ameriquest argues that Craig is

not a consumer as defined by the DTPA and therefore cannot recover for his claims as

a matter of law.

The DTPA is liberally construed and comprehensively applied. § 17.44(a); *Head

v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 743 (Tex. App.–Fort Worth 2005, no

4

pet.).  In a DTPA cause of action, a plaintiff must establish (1) he or she is a consumer; (2) there were false, misleading, or deceptive acts, an unconscionable act, or an act in violation of Article 21.21 of the Insurance Code; and (3) that the act or acts constituted a producing cause of damages. § 17.50(a)(1), (3), (4) (Vernon 2002); *see also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *Kahlig v. Boyd*, 980 S.W.2d 685 690 (Tex. App.–San Antonio 1998, pet. denied).  Because only consumers have standing to bring an action under the DTPA, a plaintiff must show he or she meets the statute's definition of consumer.  *Fed. Sav. & Loan Ins. v. Kralj*, 968 F.2d 500, 507 (5th Cir. 1992);  *Rojas v. Wal-Mart Stores, Inc.*, 857 F. Supp. 533, 536 (N.D. Tex. 1994); *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 133 (Tex. App.–Corpus Christi 2001, no pet.).  Generally, the determination of whether a party is a consumer is a question of law for the courts.[2]  *Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 124 n.2 (Tex. App.–Texarkana 1994, writ denied)*; Sec. Bank v. Dalton*, 803 S.W.2d 443, 451 (Tex. App.–Fort Worth 1991, writ denied); *see also Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 356 (5th Cir. 1996).

The DTPA defines a consumer as someone who seeks or acquires goods or

---

[2]  The Court notes, however, that the underlying factual basis for consumer status may create factual issues for a jury.  *Ford*, 44 S.W.3d at 133.

services by lease or purchase.[3] § 17.45(4).  Additionally, the goods or services sought or acquired must form the basis of the party's complaint.  *Ford*, 44 S.W.3d at 133.  If either of these two threshold requirements is lacking, then the plaintiff must seek redress via some other statute or common law cause of action.  *Id*.

In the instant case, Craig seemingly alleges Ameriquest acted unconscionably and misrepresented material facts to him after Craig closed on his home April 11, 2002. He alleges that in July 2002, Ameriquest sent him letters stating he had no insurance on the property, it would give him until September 2002 to obtain insurance, and if he failed to do so, Ameriquest would secure a policy on the property and charge him for the premium.[4]  Craig contends that on September 10, 2002, he purchased another policy from Miles Insurance Agency[5] ("Miles"), but Ameriquest continued to notify him through December 2002 that he was violating the loan terms by not keeping the property insured.  He alleges Miles forwarded proof of his valid policy to Ameriquest.

On December 4, 2002, Craig asserts that he paid his monthly mortgage, but

---

[3]  Additionally, the DTPA defines goods as tangible chattels or real property purchased or leased for use; services are work, labor or service  for use, including services furnished in connection with the sale or repair of goods. § 17.45(1), (2).

[4]  Craig alleges Ameriquest was aware he obtained a policy effective upon his home closing.  Craig's pleadings did not include a copy of this policy or indicate its terms or length.

[5]  Craig asserts that the September policy was effective through February 25, 2003.

Ameriquest applied this payment to an escrow account and subsequently reported to credit agencies that Craig had not paid his December mortgage.[6]  Craig contends Ameriquest stopped accepting his mortgage payments in April 2003 because of his contesting the amount he owed, and notified him of its intent to begin foreclosure proceedings on March 6, 2003 if his account was not current.[7]  Craig contends he paid $5,285 on April 18, 2003 and then wrote a check for his May mortgage, which Ameriquest returned.

Craig ostensibly argues his interactions with Ameriquest qualify him as a consumer for DTPA purposes.  Ameriquest challenges both the facts alleged in Craig's pleadings and his consumer status.

Ameriquest counters Craig's allegations of its misconduct with evidence that he violated the terms of their adjustable rate note and deed of trust.[8]  The note required

---

[6]  Craig asserts Ameriquest notified him on May 1, 2003 that it would restore his credit to its status before December 2002 when it reported his payment history to credit agencies, but Ameriquest never corrected this information, keeping his credit score lower than it should have been.

[7]  Craig alleges Ameriquest informed him on January 15, 2003 that the dispute over how much he owed it was resolved, but Ameriquest did not withdraw his monthly mortgage from his bank account as agreed.  Craig concedes that prior to April 18, 2003, he had not paid his mortgage for three months, but blames this fact on Ameriquest's rejection of his payments pending the insurance dispute.

[8]  The Court notes that pursuant to the parties' agreement, Craig was required to notify Ameriquest of any insurance policy he obtained for the property.

7

that Craig pay his mortgage at the beginning of every month; the deed permitted Ameriquest to obtain insurance on the property if Craig did not maintain a policy and to charge Craig for such a policy. Rose Lara ("Lara"), Ameriquest's Foreclosure Manager, states Ameriquest obtained a policy through Empire Indemnity Insurance Company ("Empire") in August 2002 after notifying Craig of a lapse in coverage and then billed him for the premium. After Craig obtained his own policy in September 2002 with Miles and provided Ameriquest with proof of the policy, Lara states Ameriquest canceled the Empire policy and applied for a refund.

Additionally, Lara contends the policy on Craig's home expired again March 18, 2003, and after his failure to respond to its notifications, Ameriquest again obtained a year-long policy on the property, which it renewed in 2004. Finally, Ameriquest directs the Court to Craig's admission that he allowed his insurance to expire in March 2003 and never obtained another policy on the property.

In addition to not maintaining insurance on the property, Ameriquest asserts Craig failed to timely make his mortgage payments for December 2002 and January through April 2003. Lara asserts Ameriquest notified Craig of his default and its intent to accelerate the note on April 7, 2004, which it did on June 4, 2004.[9] She avers that

---

[9] The amount due on the loan at foreclosure was $226,917, which included $5,090 in insurance premiums.

beginning June 4, 2003, Ameriquest rejected Craig's monthly payments after he refused to pay the insurance costs for the policies Ameriquest obtained.  Finally, Lara contends Ameriquest foreclosed on Craig's home July 6, 2004, and  obtained possession of the house on January 3, 2005.

Ameriquest argues these facts demonstrate as a matter of law that Craig cannot meet the DTPA's standing threshold because he is not a consumer.  Ameriquest contends that he lacks consumer status because the goods or services Craig acquired–a loan in connection with a home purchase–are not the subject of his complaints.  In this case, Ameriquest argues, Craig does not allege a complaint with the property, but rather his claims pertain to Ameriquest's requirement that he maintain hazard insurance on the property.  Consequently, Ameriquest argues, he cannot meet the DTPA's definition of consumer.

In 1980, the Texas Supreme Court held a pure loan transaction fell outside the DTPA because money is neither a good nor a service.  *Riverside v. Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980).  Since that time, however, Texas law has departed from this general rule.  *See Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983) (characterizing plaintiffs who sought financing for a house as consumers because they "did not seek to borrow money; they sought to acquire a house").  However, Texas courts have maintained the requirement that the

9

goods or services sought by the borrower must form the basis of the complaint. *Id.*; *see also Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 388 (Tex. 1982).

In the case at bar, Craig produces no summary judgment evidence showing he was a consumer seeking or acquiring goods or services by purchase or lease. The Court determines that Craig's complaint arises from a standard hazard insurance requirement upon which he agreed in order to secure financing for his home. It does not arise from the house or property he bought in connection with the loan proceeds. As such, the good he acquired through Ameriquest does not form the basis of his complaint. *See, e.g., Ford*, 44 S.W.3d at 135 (rejecting plaintiff's argument that he was a DTPA consumer when the cattle bought by plaintiff with loan proceeds did not form the basis of his complaint); *Walker v. Fed. Deposit Ins. Corp. v. Mainland Sav. Ass'n*, 970 F.2d 114, 123 (5th Cir. 1992) (finding plaintiffs were not consumers under DTPA because they sought to use a loan for the construction of a building, and their complaints did not pertain to the building itself); *Central Texas Hardware v. First City, Texas–Bryan, N.A.*, 810 S.W.2d 234, 237 (Tex.App.–Houston [14th Dist.] 1991, writ denied) (determining plaintiff lacked consumer status because he did not allege any complaint regarding the inventory items he intended to buy with proceeds from a loan). Consequently, Craig is not a consumer within the DTPA as a matter of law and lacks standing to recover pursuant to his claims. Thus, summary judgment as to Craig's

DTPA claims is granted.

Alternatively, even if the Court assumes arguendo for purposes of its analysis that Craig meets the DTPA's definition of consumer, he also must establish that Ameriquest made material misrepresentations to him and engaged in unconscionable conduct. § 17.50(a). The DTPA defines an unconscionable action as one which "takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree" and to the consumer's detriment. § 17.45(5). Under this standard, Craig must proffer some evidence to create a genuine issue of material fact about whether Ameriquest took advantage of his lack of knowledge and "the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985)).

Ameriquest presents evidence suggesting the actions it took were permissible under the adjustable rate note and deed of trust. Other than Craig's unsubstantiated conclusory allegations, nothing before the Court suggests Ameriquest acted unconscionably or made misrepresentations in securing insurance on the property or accelerating the loan because of Craig's nonpayment. *See Hennigen v. Heights Sav. Ass'n*, 576 S.W.2d 126, 129 (Tex. Civ. App.--Houston, [1st Dist.] 1978, writ ref'd n.r.e.) Both acts were authorized under the deed of trust and constituted neither false,

11

misleading or deceptive practices nor unconscionable actions. *See id*.; *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 333 (Tex. 1983) (finding no DTPA violation when bank had a right to foreclose under a contract lien).  Accordingly, the Court hereby

ORDERS that Defendant Ameriquest's Motion for Summary Judgment (Instrument No. 11) is GRANTED.

SIGNED at Houston, Texas, on this 4th day of November, 2005.

_____

DAVID HITTNER

United States District Judge

12